Fusco v Barnwell House of Tires, Inc. (2004 NY Slip Op 50490(U))

[*1]

Fusco v Barnwell House of Tires, Inc.

2004 NY Slip Op 50490(U)

Decided on March 12, 2004

Supreme Court, Suffolk County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 12, 2004

Supreme Court, Suffolk County
ANTHONY FUSCO and BARBARA FUSCO, Plaintiffs,
against
BARNWELL HOUSE OF TIRES, INC. and BEN CARUSO, Defendants.
00813-2002

JOHN L. JULIANO, PC
Attorney for Plaintiffs
39 Doyle Court
East Northport, NY 11731
JONES HIRSCH CONNORS & BULL
Attorneys for Defendants
1 Dag Hammarskjold Plaza
New York, NY 10017

Robert A. Lifson, J.
The defendants move in this negligence action for summary judgment upon the asserted grounds that plaintiff Anthony Fusco did not sustain a "serious injury"within the definition and requirement of Insurance Law §§ 5102(d) and 5104(a). Plaintiffs oppose the motion and cross move for summary judgment on the issue of liability. These motions were submitted for decision on February 26, 2004.
This action arises from a motor vehicle accident which occurred on October 24, 2001, at the intersection of Sycamore Avenue & Pond Road in Bohemia, County of Suffolk, New York, when the vehicle driven by defendant Caruso came into contact with the rear portion of the vehicle driven by plaintiff Anthony Fusco.
This action was commenced on or about January 25, 2002. Issue was joined on May 16, 2003. A note of issue was filed on September 2, 2003. The instant application was made on December 18, 2003.
Upon a motion for summary judgment, the initial burden of proof is upon the movant to demonstrate its entitlement to judgment as a matter of law. Lowe v Bennett, 122 AD2d 728, 511 NYS2d 603, aff'd., 69 NY2d 700, 512 NYS2d 364 (1986) citing Zuckerman v City of New York, 49 NY2d 557, 427 NYS2d 595 (1980). If movant discharges its initial burden, the burden shifts to the opposing party which must then go forward with proof in admissible form demonstrating the existence of a genuine, material issue of fact warranting a trial. Louros v Parmiter, 288 AD2d 273, 732 NYS2d 888 (Second Dept., 2001); Papadopoulas v Gardner's Village, Inc., 198 AD2d 216, 604 NYS2d 270 (Second Dept., 1993); Zuckerman, supra.
[*2]
In the plaintiffs' amended bill of particulars it is asserted that plaintiff Anthony Fusco, age 64 on the date of the accident, sustained the following injuries:

a)Undersurface tear of the posterior horn of the left medial meniscus;
b)Left knee contusion;
c)Central disc herniations at L4-5 and L5-S1;
d)Bilateral L4-L5 lumbar radiculopathy;
e)Cervical, thoracic, sprain and strain;
f)Right median neuropathy at the wrist (Carpal tunnel syndrome);
g)Temporal Mandibular joint dysfunction;

h)Severe trauma to the plaintiff's head, jaw neck shoulder arms back, knees, legs...
Plaintiff further states in the bill of particulars that he was confined to bed and home for "approximately one (1) month" following the accident; however, at deposition, plaintiff Anthony Fusco testified he was only confined to bed "...on certain days..." when he would "...stay in bed most of the day..." (Exhibit H, transcript of examination before trial of plaintiff Anthony Fusco dated March 12, 2003, at p. 52). Plaintiff claims that he experienced difficulty sleeping and driving as a result of the accident, that he cannot "run" or take a walk with his wife and that he has difficulty with stairs and doing home repairs.
At his deposition herein, plaintiff Anthony Fusco stated that on the date of the accident he went to the hospital emergency room where he was x-rayed and discharged and that, approximately two weeks later, he went to Bay Shore Physical Therapy complaining about his neck, knee and back, as well as his jaw. At that facility, plaintiff saw Dr. Trimba and claims he attended physical therapy for his back and knee three to four times per week for three to four weeks, then once weekly until eight or nine months following the accident (see transcript of deposition of plaintiff Anthony Fusco at p. 40, exhibit H to affirmation of James A. Domini dated December 18, 2003). At the same facility plaintiff obtained chiropractic care (at the same level of frequency as the physical therapy) from Dr. LaFaus. He later sought acupuncture for his neck and back once a week for approximately two months (id., at pp. 41-43). Bay Shore sent plaintiff for an MRI for his back and left knee which were performed at United Diagnostic Imaging. Plaintiff also saw Dr. Lim, an orthopedist at said facility. Plaintiff also saw a dentist Dr. Lader and Bay Shore ("maybe three or four" times) who provided him with a brace for his teeth to alleviate jaw pain (id., at p. 48). Plaintiff also treated with a psychologist at Bay Shore on two or three occasions concerning sleeping difficulty and discomfort in driving a car.
In support of their motion, the defendants rely upon the affirmed reports of their examining orthopedist, Dr. William A. Healy, who examined plaintiff on May 5, 2003, a neurologist, Dr. Howard B. Reiser, M.D., who examined plaintiff on April 23, 2003 and Donald R. Tanenbaum, DDS, MPH, a dentist who examined plaintiff on September 13, 2003 (exhibits E, F and G to affirmation of James A. Domini dated December 18, 2003).
Dr. Healy, the defendant's examining orthopedist, notes in his affirmation/report dated May 7, 2003, that plaintiff Anthony Fusco's physical examination was normal and sets forth the following "conclusion":

Based on the history, the physical examination and review of the MRIs of his knee and lumbar spine, it is my opinion that this patient did not sustain any serious injury at the time of this accident. It appears that he has degenerative arthritis according to the reports, in [*3]his neck, associated with degenerative disc disease, as well as degenerative arthritis and degenerative disc disease in the lumbar spine. It appears that he has no evidence of involvement or injury to the knee based on my clinical examination and history at this time. Regarding his TMJ, this is reserved for the appropriate specialist. At this time it is my opinion that the patient will not require any further care or treatment for injuries sustained in this accident and will not have any permanent disabilities.
Dr. Reiser, defendant's examining neurologist, notes in his report dated April 23, 2003, that the results of his physical examination of plaintiff were negative (with the exception of an unrelated left eye problem). His report concludes:

IMPRESSION: Mr. Fusco presents with subjective post traumatic symptoms including pain in his left knee, low back, jaw, posterior neck and right shoulder. He reports no ongoing symptom to suggest a specific neurological diagnosis. Furthermore, his neurological examination reveals no objective causally related deficit. There are abnormalities with reference to his left eye, which are secondary to childhood pertussis infection and left eye surgery which occurred following pertussis. There is no ongoing symptom or objective finding to suggest either a lumbar radiculopathy or carpal tunnel syndrome.
Although MRI of his lumbar spine reportedly revealed central herniations at L4-5 and L5-S1, there was no reported neural compression. Furthermore, although EMG and nerve conduction studies, reportedly revealed findings suggestive of right median neuropathy and bilateral L4-5 radiculopathy, the submitted data does not correlate well with the interpretations by Dr. Trimba. Furthermore, there is no symptom or ongoing finding to suggest either median nerve involvement or lumbar nerve root involvement.
In summary, based on the history, today's neurological examination and the review of medical records, there is not evidence of an objective ongoing neurological disorder causally related to the incident of 10/29/01.
Defendant's examining dentist, Dr. Tanenbaum, notes in his report/affirmation dated November 5, 2003 (based upon his September 19, 2003, examination) in relevant part as follows:

From an overall perspective, it is clear that at the present time Mr. Fusco does not have an active temporomandibular problem. Clinically, he can open and close his mouth and the mechanics of the temporomandibular region are excellent. There is no evidence of muscular/joint dysfunction at the present time. Occlusal deficits continue to exist and predate the traumatic event. With regard to the history provided by Mr. Fusco in the medical records, it is clear that there was no direct impact to the face, jaw or teeth. Primary diagnoses at the hospital facility did not note a temporomandibular problem. When Dr. Lader assessed the claimant within a short period of time after the traumatic event, there did not appear to be any major mechanical deficits, but a number of areas that were reactive to palpation. Dr. Lader assigned multiple diagnoses inclusive of joint [*4]and muscle inflammation and trigger points with referred pain. Dr. Lader did not suggest that there was any major mechanical problems and this correlated within his examination. Medical records from Mr. Fusco's dentist, generated between 1995 and the year 2000, suggested no preexistent temporomandibular problems. Presently, Mr. Fusco does not have an active temporomandibular problem and is not in need of care. There is stability within th jaw region and long term prognosis is excellent. There are no residuals with regard to the temporomandibular tissues. There is no suffering at the present time and apparently Mr. Fusco has not sought care in the recent past.
The medical records in my possession suggest that no direct impact occurred to the face, jaw or teeth. The current symptoms in the masticatory region, therefore, likely were the result of possible referral mechanisms from the cervical region producing muscle guarding and co-contraction. An indirect relationship will, therefore, be postulated. From a contributory standpoint, it is possible that his preexistent occlusal relationships, which were characterized by multiple missing teeth, created a situation whereby normal function required a great deal of muscle and joint activity as there were insufficient teeth to provide mastication efficiently. Since, however, records from his former dentist do not describe jaw dysfunction, this cannot be clearly discerned.
Presently, Mr. Fusco has full capacity to use his jaw. ADL's are normal. His jaw does not impact his daily existence in any way.
Upon the proof adduced by defendants, the court finds that defendants have demonstrated prima facie that plaintiff Anthony Fusco did not sustain a "serious injury" within any of the several definitions thereof set forth in the statute, Insurance Law § 5102(d); accordingly, the burden shifts to plaintiffs to go forward with proof demonstrating the existence of a material issue of fact. Yu v Pae, 201 AD2d 697, 608 NYS2d 286 (Second Dept., 1994).
Plaintiffs submit the affirmation/report of Dr. Trimba who initially saw plaintiff Anthony Fusco on November 9, 2001 [FN1]. The affirmation is dated January 21, 2004. Dr. Trimba's initial "impression" based upon his November 9, 2001 (eleven days following the accident) examination of plaintiff is stated as follows:

Impression:
1. Cervical, thoracic, lumbar strain & sprain.
2. Left knee contusion.
It is noted that, upon such initial examination, Dr. Trimba noted certain limitations in range of motion. However, he fails to state what testing was performed to arrive at his findings in this regard, rendering this observation of no probative value. Herman v Church, 276 AD2d 471, 714 NYS2d 87 (Second Dept., 2000). The therapy noted and discussed above was planned together with tylenol and "thermophore for home use." Dr. Trimba again saw plaintiff on December 11, 2001 and January [*5]8, 2002 [FN2] and, although he refers to finding "limited range of motion in the spine", his report as to these dates lacks any specific extent of the cited limitation (see: Weissman v Nally, 277 AD2d 222, 716 NYS2d 868 (Second Dept., 2000)). Dr. Trimba also refers to the MRI of the lumbar spine and left knee. Although the reports of same are not annexed to his report, the reports are separately submitted by plaintiffs in affirmation form (affirmed February 4, 2004) signed by radiologist Dr. Mark Shapiro (of United Diagnostic Imaging, P.C.),who conducted the studies on December 14, 2001. Dr. Shapiro found, as his "impression" of the left knee MRI:

Impression: Undersurface tear of the posterior horn of the medial meniscus.
As to the lumbar MRI, Dr. Shapiro stated his impression as follows:

Impression: Central disc herniations at L4-5 and L5-S1 with abnormal signal.
There is absent from Dr. Shapiro's two affirmations/reports any opinion as to the causation of his findings. The only source, potentially, for a causative correlation then is the January 21, 2004, report by Dr. Trimba.
The affirmation/report of Dr. Trimba is deficient in significant respects. First, as discussed, supra., the tests performed to determine the alleged range of motion restrictions are not identified. Second, Dr. Trimba's report refers to - and Dr. Trimba appears clearly to rely upon - electromyography and nerve conduction studies (apparently performed on December 11, 2001 and January 20, 2004) the reports for which are not annexed to his report (see, in this regard, Shay v Jerkins, 263 AD2d 475, 692 NYS2d 730 (Second Dept., 1999)). Third, in the concluding section of the report by Dr. Trimba, he states as follows:

Causation:
Based upon the available information, to a reasonable degree of medical certainty, there is a probable causal relationship between the current complaint and the injury on 10.29.01.
This statement is ambiguous at to the issue of causation. Dr. Trimba does not make a clear statement that the alleged injuries in question - left meniscal tear, herniations at L4-5 and L5-S1 (and other injuries set forth in the "diagnoses" portion of his report, to wit, "1. Status post cervical, thoracic, lumbar strain & sprain; 2. L4-L5, L5-S1 disc herniation; 3. Chronic neck and low back pain; 4. Right C7 cervical radiculopathy; 5. Bilateral low lumbosacral radiculopathy; 6.left knee contusion, medial meniscus tear; 7. Left knee posttraumatic arthritis") were caused by the accident of October 29, 2001. In short, the proof offered by plaintiff is insufficient to demonstrate that a genuine, material issue of fact exists on the issue of serious injury. Therefore, defendants' motion for summary judgment is granted and the complaint is dismissed.
Accordingly, the cross motion by plaintiffs is denied as academic.
Settle judgment.
Order signed.
[*6]
Dated: March 12, 2004

J.S.C.

Footnotes

Footnote 1:The report incorrectly recites in the "history" portion that plaintiff was taken to the emergency room "by ambulance" on October 29, 2001. Plaintiff was driven to the emergency room by his wife.

Footnote 2:The reference to January 8, "2001" is an apparent typographical error.